IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| NICOLE A. CLAY,<br><br>    Plaintiff,<br><br>vs.<br><br>WOODBURY COUNTY, IOWA, et al.<br><br>    Defendants. | No. C12-4042-MWB<br><br>**ORDER** |

Plaintiff has filed a motion (Doc. No. 48) to quash subpoena and discovery deposition of her treating psychiatrist. The motion addresses a subpoena and deposition notice issued with regard to Albert Okine, PA-C, by defendants Woodbury County, Iowa, Glenn J. Parrett, Amy Strim, Brigid Delaney, Jorma Schwedler and Dustin DeGroot (the "County defendants"). Plaintiff contends that the physician-patient privilege, as recognized and applied under Iowa law, prohibits the County defendants from compelling testimony from Okine. The County defendants have filed a resistance (Doc. No. 51). The motion is fully submitted.

*Factual Background*

Plaintiff Nicole A. Clay filed this case on April 27, 2012. In her third Amended Complaint, she states that on August 12, 2011, she was arrested for public intoxication, a simple misdemeanor. She alleges that after she was taken to the Woodbury County jail, the defendant correctional officers engaged in an unreasonable strip search in violation of the Fourth Amendment and violated her First Amendment rights by engaging in this activity in retaliation for her verbal objections to their conduct. Clay also alleges that some of the defendants conducted an unreasonable search of her purse in violation of the Fourth Amendment. In addition, she alleges that Woodbury County and Parrett

established a policy, regulation, official decision, custom or usage with reckless or deliberate indifference to her rights. She demands a jury trial.

In Clay's initial discovery disclosures, she supplied her records of therapy with Albert Okine, PA-C, as well as billing statements from Okine's clinic, Dean & Associates. She also supplied a signed Patient's Release of Information allowing the defendants to obtain her medical records from Dean & Associates.

In her answer to Interrogatory No. 16, Clay stated that her damages include past pain and suffering and past loss of mind/body function. In answering Interrogatory No. 15, she identified Okine as being one of "Plaintiff's medical providers relating to the assault." She described him as a psychiatric physician's assistant who provided psychiatric treatment and care to Clay prior to and following the incident, and who continues to treat her. Clay also designated Okine in her expert witness disclosures, stating that he would testify regarding her injuries, including alleged ongoing emotional injuries and how her pre-existing mental and emotional injuries were aggravated by the jail incident.

Clay's Third Amended Complaint, filed January 2, 2013, alleges that she was "traumatized" by the defendants' allegedly-unlawful conduct. *See* Doc. No. 37 ¶ 23. She further alleges that she suffered damages because she was subjected to searches that were "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, and signified degradation and submission." *Id*. ¶ 28. She contends that she has been damaged because of the defendants' conduct, "as set out in this Complaint." *See, e.g., id*. ¶ 58.

During Clay's deposition in April 2013, she testified that some of her treatment at Dean & Associates was related to the jail incident. She further testified that her anxiety had increased as a result of the incident and the dosages of the medications she was taking for anxiety had increased. In addition, she stated that she discussed the incident

2

at the jail with Okine at a number of sessions (although defendants point out that the notes from these sessions do not mention the incident). Clay also testified that the past pain and suffering that she claims as damages included her "emotional well being." She stated that she was having emotional difficulties involving anxiety, for which she was treating with Okine.

After the deposition, and upon reviewing additional medical records, the County defendants sought to schedule Okine's deposition. Clay's counsel responded on June 6, 2013, by stating: "We are not going to use Okine and will not be asking for damages based upon psychological damages other than related to the physical injuries." In her motion, Clay further promises that she will not (a) seek to introduce Okine's records into evidence at trial or (b) seek damages for any psychiatric loss beyond the pain and suffering associated with the physical injuries caused by the defendants' alleged conduct. Clay's Motion ¶ 4. Based on these self-imposed limitations, Clay argues that the County defendants are not entitled to depose Okine concerning his treatment of Clay. The County defendants disagree.

*Analysis*

The parties agree that the extent and impact of Clay's physician-patient privilege in this case is determined by Iowa law. *See Cimijotti v. Paulsen*, 219 F. Supp. 621, 623-24 (N.D. Iowa 1963). The Iowa Code prohibits the disclosure of confidential communications between a patient and a mental health professional except "in a civil action in which the condition of the person in whose favor the prohibition is made is an element or factor of the claim or defense" of the person. Iowa Code § 622.10(2). This exception is sometimes called the "patient-litigant exception." *See, e.g., In re Marriage of Hutchinson*, 588 N.W.2d 442, 447 (Iowa 1999). In addition, of course, a patient may choose to waive the physician-patient privilege. *See* Iowa Code

3

§622.10(2); *State v. Demaray*, 704 N.W.2d 60, 64-65 (Iowa 2005). Here, the County defendants argue that the patient-litigant exception applies and, in any event, that Clay has waived the physician-patient privilege.

*__The Patient-Litigant Exception__.* As noted above, this exception applies only if Clay's emotional condition "is made is an element or factor of the claim or defense." Iowa Code § 622.10(2). It "requires that the condition of the patient be an element or factor in a claim or defense of the patient." *Ashenfelter v. Mulligan*, 792 N.W.2d 665, 672 (Iowa 2010). The Iowa Supreme Court has "specifically rejected the argument that a litigant's opponent can bring the litigant's medical records into issue." *Id*. (citing *Chung v. Legacy Corp.,* 548 N.W.2d 147, 150 (Iowa 1996)). "The denial of an element or factor of one's opponent's case does not make that element or factor part of the case of the person making the denial." *Chung*, 548 N.W.2d at 150. The purpose of the exception "is to prevent the patient from using the privilege to suppress evidence after the patient has frustrated the purpose of the privilege by introducing evidence on his or her own medical condition." *Hutchinson*, 588 N.W.2d at 447. At trial, the evidence is admissible "only as it relates to the condition alleged." Iowa Code § 622.10(2).

Prior to June 6, 2013, there could have been no doubt that Clay made her emotional condition an element or factor of her claim. She identified Okine in sworn interrogatory answers as being one of her "medical providers relating to the assault." She further indicated that she intended to seek emotional distress damages based on the jail incident and designated Okine as an expert witness who would testify regarding her injuries, including her alleged ongoing emotional distress and the aggravation of her pre-existing mental and emotional injuries. She confirmed during her deposition in April that she is claiming her anxiety increased after the jail incident and that some of her treatment at Dean & Associates was related to the incident. Thus, before June 6, the

4

patient-litigant exception easily applied and a deposition of Okine would have been fair game.

The real question is whether Clay's counsel, by announcing a change of position, undid the exception. Neither party cites authority on this issue. After analyzing the statutory language and the Iowa Supreme Court's application of the patient-litigant exception, I find that circumstances could exist that would allow the exception, once established, to be dissolved. I also find, however, that those circumstances are not present here.

Clay has not provided a supplemental interrogatory answer stating that she no longer seeks damages of an emotional or mental nature.[1] Instead, her attorney has simply represented that Clay (a) will not seek to offer records or testimony from Okine at trial and (b) will not seek damages "for any psychiatric loss beyond the pain and suffering associated with the physical injuries caused by" the defendants' alleged conduct. *See* Clay's Motion ¶ 4. Clay's announcement that she will not offer Okine's testimony or records at trial certainly does not eliminate the patient-litigant exception. The issue is whether her emotional condition is an "element or factor" of her claim, not how she intends to prove her claim at trial. Clay's approach would allow a litigant to selectively apply the patient-litigant exception, maintaining a claim for emotional damages while putting certain health care providers off limits by declaring an intention not to rely on those providers during his or her case-in-chief.

Clay's attempt to limit the scope of her "psychiatric loss" damages is closer to the mark, but it is actually too cute. In fact, it falls directly within the purpose of the patient-litigant exception, as described in *Hutchinson*. Clay still seeks to recover some damages for "psychiatric loss," but wants to limit any evidence of that loss to her own

---

[1] At least, I assume this is the case. The County defendants provided copies of various interrogatory answers with their resistance and Clay did not file a reply or otherwise insert new, supplemental answers into the record.

5

testimony about suffering that she will claim is "associated with the physical injuries." In other words, she wants to offer evidence about her medical condition and use the physician-patient privilege to suppress additional, and possibly contradictory, evidence.

Clay quotes *Chung* for the cautionary proposition that an "imaginative lawyer" can almost always make the opposing party's physical or mental condition a factor in the case, thereby creating an argument for applying the patient-litigant exception. Clay's Brief at 3 (quoting *Chung*, 548 N.W.2d at 150-51). This concern is not present here. Clay has actively and definitively inserted her emotional condition into this case from the beginning. While I see no reason why a litigant could not dissolve the patient-litigant exception by clearly and unambiguously removing a medical condition from his or her case, that has not happened here. Clay's own motion demonstrates that she still intends "psychiatric loss" to be part of this case, to some degree. As such, the patient-litigant exception still applies and the County defendants are free to depose Okine.

*Waiver.* The County defendants also argue that Clay has waived the physician-patient privilege by virtue of her conduct throughout this case. The acts that allegedly give rise to a waiver include: (a) voluntarily providing copies of Okine's records to defense counsel, (b) providing a signed patient's waiver allowing the defendants to obtain records from Okine, (c) designating Okine as an expert witness and (d) testifying about her counseling and treatment with Okine. Under Iowa law, the physician-patient privilege "may be waived by the defendant's disclosure or consent to disclosure of the privileged information." *Demaray*, 704 N.W.2d at 65.

In determining whether a waiver has occurred, the "important focus is on the concept of confidentiality." *Id*. at 66. Once a patient consents to the release of medical information, he or she destroys the confidentiality between him or her and the doctor with regard to that information. *Id*. While consent can be revoked, such revocation does not reinstate the privilege with regard to information already disclosed.

6

*Id*. Moreover, "voluntary disclosure of the content of a privileged communication constitutes waiver as to all other communications on the same subject." *Miller v. Continental Ins. Co.*, 392 N.W.2d 500, 504–05 (Iowa 1986).

Based on these principles, it is clear that Clay has waived her physician-patient privilege with regard to Okine. Her initial disclosures in this case included copies of Okine's records. She also executed a patient's waiver that allowed the defendants to obtain treatment records. Further, she testified in detail about her sessions with Okine. It is far too late for Clay to change her mind and reinstate the physician-patient privilege between herself and Okine. Clay's waiver of that privilege provides an alternative basis for denying Clay's motion.

*Summary*. Clay could have maintained her statutory privilege with regard to Okine by never asserting a claim based on emotional injury or, at least, by withdrawing that claim before taking actions that waived the privilege. Now, long after waiving the privilege, she seeks to reinstate it while also withdrawing only part of her claim for emotional injury. Her effort is not sufficient to dissolve the patient-litigant exception and, in any event, is far too late. The County defendants are entitled to depose Okine concerning his counseling and treatment of Clay. Of course, this order addresses discovery, not admissibility. Clay remains free to argue that Okine's testimony is irrelevant or otherwise inadmissible at trial.

*Conclusion*

For the reasons described herein, plaintiff's motion (Doc. No. 48) to quash subpoena and discovery deposition of her treating psychiatrist is **denied**.

**IT IS SO ORDERED.**

**DATED** this 18th day of July, 2013.

                                                                        _____
                                                                         LEONARD T. STRAND
                                                                         UNITED STATES MAGISTRATE JUDGE