**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

NICOLE A. CLAY,

                          Plaintiff,

vs.

AMY STRIM and BRIGID DELANEY,
individually and as Deputy Sheriffs/
Jailers of Woodbury County, Iowa; and
BRAD ECHTER, individually and as a
Police Officer for the City of Sioux City,

                          Defendants.

No. C 12-4042-MWB

**MEMORANDUM OPINION AND**
**ORDER REGARDING THE**
**PARTIES' MOTIONS IN LIMINE**

**(_FILED UNDER SEAL_)**

_____

**TABLE OF CONTENTS**

**I.    INTRODUCTION**.................................................................. 2

**II.   LEGAL ANALYSIS** ............................................................ 3
     **A.    _Plaintiff Clay's Motion In Limine_**............................... 3
            **1.    _Challenged categories of evidence_** ...................... 3
            **2.    _Disputed categories of evidence_** ......................... 4
                   **a.    _Evidence concerning unrelated injuries_** ....................... 4
                   **b.    _Evidence of the degree of Clay's intoxication_** ............... 9
            **3.    _Summary_**................................................. 11
     **B.    _The County Defendants' Motion In Limine_** ................... 12
            **1.    _Challenged categories of evidence_** ..................... 12
            **2.    _Disputed categories of evidence_** ........................ 12
                   **a.    _Use of the terms "search" or "strip search"_**............... 12
                   **b.    _Evidence that ordering Clay to remove her_**
                          **_clothing or observing her doing so was_**
                          **_prohibited_**........................................ 15
                   **c.    _Evidence from other cases_** ..................... 17
                   **d.    _Evidence of physical injuries other than from_**
                          **_head "banging"_** ................................. 20

        *e.*     *The "follow officers' orders" evidence* ...................... 22
    *3.*     *Summary* ................................................................... 24
  *C.*    *Defendant Echter's Motion In Limine* ....................................... 24
    *1.*     *Challenged categories of evidence* .................................. 24
    *2.*     *Disputed categories of evidence* ...................................... 25
        *a.*     *Claims of injury from the incidents involving*
              *defendant Echter* ................................................. 25
        *b.*     *Evidence of a "search" of Clay's cell phone* ............... 26
    *3.*     *Summary* ................................................................... 27

*III.*    *CONCLUSION* ............................................................................. 28

## I.     INTRODUCTION

In this action pursuant to 42 U.S.C. § 1983, plaintiff Nicole A. Clay, a female arrestee, asserts claims arising from her arrest by a Sioux City police officer and an incident during her "booking" into the Woodbury County Jail where she was taken after her arrest. Clay's remaining claims against remaining defendants, after I granted in part and denied in part the defendants' summary judgment motions, are the following: (1) Clay's "unconstitutional property search" claim in Count I, but only to the extent that it involves a search of her purse and only against defendant Sioux City Police Officer Brad Echter; (2) the part of Clay's claim in Count IV alleging "excessive force," but only against defendant Woodbury County Sheriff's Deputies Amy Strim and Brigid Delaney (the County Defendants); and (3) Clay's "free speech retaliation" claim in Count V, but only against the County Defendants, and only if Clay first prevails on her

"excessive force" claim. *See* Memorandum Opinion And Order (docket no. 68), *published at Clay v. Woodbury Cnty., Iowa*, 982 F. Supp. 2d 904 (N.D. Iowa 2013).

This case is now before me on the remaining parties' Motions In Limine, filed in anticipation of a January 2014 trial date. This case was subsequently continued to the current trial date of October 27, 2014, so that the time is now ripe to consider the parties' evidentiary motions. I will consider the parties' Motions In Limine in turn.

## II.    LEGAL ANALYSIS

### A.    Plaintiff Clay's Motion In Limine

#### 1.    Challenged categories of evidence

In her December 26, 2013, Motion In Limine (docket no. 69), Clay seeks exclusion of the following six categories of evidence: (1) any reference to any settlement demand or settlement discussions of any nature, the content thereof, the amount demanded or offered, or any other comment or statement intended to convey in any manner the existence of settlement negotiations or the amounts thereof; (2) reference to the fact that her motion in limine was filed; (3) any request by the defendants that her counsel stipulate to the admissibility of any evidence or to any facts in the presence and hearing of the jury; (4) any reference to or testimony from any person to be called as a witness on behalf of the defendants, including expert witnesses, if that witness and his or her testimony was not previously identified and fully disclosed as required by the Federal Rules of Civil Procedure; (5) any medical records or testimony unrelated to the physical injury suffered by Clay, including any reference to or testimony from any of her medical providers with regard to any counseling or treatment for psychological or substance abuse issues, past or future; and (6) any evidence, reference to, or testimony from any person

to be called as a witness as to the degree of Clay's intoxication at times prior to and during the incidents at issue in this case.[1]

In his Resistance (docket no. 77), filed January 13, 2014, defendant Echter disputes the admissibility only of evidence in categories (5) and (6), but requests that the prohibition in category (4) also extend to Clay—which it does by operation of the very rules on which that part of Clay's Motion is based. In their Resistance (docket no. 78), filed January 12, 2014, the County Defendants, likewise, dispute the admissibility only of evidence in categories (5) and (6). In light of the defendants' responses, I grant Clay's Motion In Limine as to exclusion of categories (1) through (4). I will consider in more detail here only the disputed evidence in categories (5) and (6).

### 2.    *Disputed categories of evidence*

#### a.    *Evidence concerning unrelated injuries*

The fifth category of evidence that Clay seeks to exclude is medical records and testimony from her medical providers concerning "unrelated" injuries. Clay alleges that she suffered physical injuries, including associated pain and suffering, as a result of the defendants' unconstitutional conduct. She states that she had pre-existing relationships with Dr. Paul Peterson and Albert Okine, PA-C; that Dr. Peterson provided her, and continues to provide her, with general medical care, as well as treatment and care relating to mental health and substance abuse issues; and that Mr. Okine, a psychiatric physician's assistant, also provided and continues to provide treatment and care relating to mental health and substance abuse issues. Clay contends that, based on a review of her medical

---

[1] Clay refiled an identical Motion In Limine (docket no. 81) on September 5, 2014. Although Clay's counsel was notified by the Clerk of Court that the September 5, 2014, Motion In Limine was identical to the December 26, 2013, Motion In Limine already pending, Clay's counsel has not withdrawn the latter Motion. The latter Motion will be denied as duplicative.

records, which have also been reviewed by the defendants during discovery, she has determined that she will not seek to introduce those records into evidence at trial, nor will she seek damages for any psychiatric loss beyond the pain and suffering associated with the physical injuries caused by the defendants' allegedly wrongful conduct. Clay represents that she is not going to support her damages claims with her psychiatric records, counseling records, or testimony from care providers. She argues that allowing evidence that she has been treated for mental health and substance abuse issues could prejudice the jurors against her and that such evidence is not related in any way to her claims.

Defendant Echter argues that, if Clay intends to seek compensatory damages for the mental pain and suffering that she claims was caused by the incidents alleged, then clearly her behavioral health records and her medical treatment records may be relevant to those issues and should be admissible to show that there were alternatives causes for her emotional distress or mental pain and suffering. Similarly, the County Defendants argue that Clay has made her mental or emotional condition an element of or a factor in her damages claims, because she is seeking damages for mental pain and suffering and emotional distress. That being so, they argue that even Clay's representation that she is only seeking psychological damages associated with her physical injuries from the defendants' conduct at issue should not prevent the defendants from showing alternative causes or reasons for her alleged psychological damages. They argue that, whether Clay's position is based on relevancy or physician-patient privilege, her position cannot stand, because she cannot have it both ways by seeking damages for psychological injuries while seeking suppression of evidence of other causes for such injuries. They add, further, that they should be able to present evidence of the effect that any of Clay's psychological and substance abuse issues or her medications can have on an individual consuming alcohol. This is so, they argue, because that evidence relates to Clay's

5

credibility and her ability to perceive, comprehend, and recall what transpired at the Jail, when she was admittedly intoxicated, and may explain the degree of force required and used by the County Defendants.

As the County Defendants point out, United States Magistrate Judge Leonard T. Strand addressed similar issues when he ruled on Clay's Motion To Quash, relating to a subpoena to and discovery from Mr. Okine. *See* July 18, 2013, Order (docket no. 58). Judge Strand observed,

> Clay's attempt to limit the scope of "psychiatric loss" damages . . . is actually too cute. In fact, it falls directly within the purpose of the patient-litigant exception, as described in [*In re Marriage of Hutchinson*, 588 N.W.2d 442 (Iowa 1999)]. Clay still seeks to recover some damages for "psychiatric loss," but wants to limit any evidence of that loss to her own testimony about suffering that she will claim is "associated with the physical injuries." In other words, she wants to offer evidence about her medical condition and use the physician-patient privilege to suppress additional, and possibly contradictory, evidence.
>
> Clay quotes *Chung [v. Legacy Corp.*, 548 N.W.2d 147 (Iowa 1996)] for the cautionary proposition that an "imaginative lawyer" can almost always make the opposing party's physical or mental condition a factor in the case, thereby creating an argument for applying the patient-litigant exception. Clay's Brief at 3 (quoting *Chung*, 548 N.W.2d at 150-51). This concern is not present here. Clay has actively and definitively inserted her emotional condition into this case from the beginning. While I see no reason why a litigant could not dissolve the patient-litigant exception by clearly and unambiguously removing a medical condition from his or her case, that has not happened here. Clay's own motion demonstrates that she still intends "psychiatric loss" to be part of this case, to some degree. As such, the patient-litigant exception still applies and the County defendants are free to depose Okine.

July 18, 2013, Order at 5-6.

I find that Judge Strand's analysis applies with equal force to the question of *admissibility* as it did to the question of *discoverability*. Clay's attempt to have it both ways, asserting a claim for mental or psychological injury while attempting to exclude evidence that might identify alternative sources for such injuries, remains "too cute." Even Clay's recast argument based on a Rule 403 balancing of probative value against potential for unfair prejudice, rather than on physician-patient privilege, is "too cute."

First, this evidence of alternative sources of any emotional distress or mental pain and suffering that Clay claims to suffer is plainly probative. This evidence is also plainly probative because it explains Clay's behavior and ability to perceive events at the time of the incidents in question, as well as her credibility. Thus, such evidence satisfies Rules 401 and 402 regarding relevance and admissibility of relevant evidence. Nor does any potential for unfair prejudice outweigh that probative value here, under Rule 403. As the Eighth Circuit Court of Appeals has explained, "Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). A determination on an "improper basis" includes an emotional reaction to the evidence, rather than a determination on the basis of evidence presented. *See United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) ("'Whether there was unfair prejudice depends on whether there was an undue tendency to suggest decision on an improper basis.'" (quoting *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted)); FED. R. EVID. 403, Advisory Committee Notes (explaining that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one."); *see also*

7

*United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting the notes to Rule 403). The mental health and substance abuse evidence at issue here is likely detrimental to Clay's case, but it is not "unfairly prejudicial." *Myers*, 503 F.3d at 681. While it is possible that mental health and substance abuse evidence could invite a decision on an improper, emotional basis, *see Muhlenbruch*, 634 F.3d at 1001, concerns about such prejudice are substantially reduced where, as here, Clay is the one who put her mental health and substance abuse at issue by claiming psychological injuries and mental pain and suffering.

This is not to say that the defendants have a license to "smear" Clay with disproportionate evidence about her mental health and substance abuse. The balance of probative value against prejudice tips in favor of admissibility only as long as such evidence is used to focus on alternative causes of Clay's alleged psychological injuries or mental pain and suffering, or on her behavior at the time of the incident, or on her ability to perceive events at issue. Clay may object at trial to what she believes is excessive or cumulative evidence of mental health or substance abuse treatment and may request an appropriate limiting instruction. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). I will consider the appropriateness of such objections or any proposed limiting instruction in the context of the evidence presented at trial.

The fifth part of Clay's Motion In Limine is denied.

### b.       *Evidence of the degree of Clay's intoxication*

The parties also dispute the admissibility of the sixth category of evidence identified in Clay's Motion In Limine, that is, evidence relating to the degree of Clay's intoxication at times prior to and during the incidents in question.  Clay contends that the fact that she was intoxicated and the degree of her intoxication is irrelevant to the issues to be decided in this case.  She points out that, in my Memorandum Opinion And Order Regarding Plaintiff's Motion To Exclude Expert Testimony And Report Of Donald Leach II And Defendants' Motions For Summary Judgment (docket no. 68), I stated, "I do not find that the degree of Clay's intoxication is material to the disposition of any portion of the pending motions." *See Clay*, 982 F. Supp. 2d at 910.

Defendant Echter argues that Clay's level or degree of intoxication is relevant to Clay's memory (or lack thereof); Clay's perception of and ability to recall events during the incident and following the incident, as shown by her inability to recall that she had placed the 911 call that led to her arrest; his decision to conduct the search of Clay's purse incident to arrest minutes after Clay's arrest at the controlled facility of the Jail rather than at the scene of the arrest; and Clay's ability to control her emotions.  Echter argues that such evidence is, consequently, admissible in support of his theory of defense. The County Defendants, likewise, argue that Clay has admitted that she was intoxicated on the evening in question and, thus, evidence of the degree of her impairment is relevant to her ability to recall events, to comprehend and follow instructions at the time of the incidents, her behavior during those incidents, and the effect of the interaction of alcohol and medications that she was taking on her ability to perceive and remember events. Moreover, they argue that the degree of her intoxication is relevant to her memories about when particular alleged physical injuries occurred.

It is true that in my summary judgment ruling, in the statement of the factual background, I noted that the parties appeared to dispute the degree of Clay's intoxication, and I then observed, "I do not find that the degree of Clay's intoxication is material to the disposition of any portion of the pending motions." *Clay*, 982 F.3d at 110. An observation that evidence of the degree of Clay's intoxication was not material to the disposition of any issues raised in pending summary judgment motions is a far cry from a determination that such evidence will not be relevant and admissible at trial.

The fact and degree of Clay's intoxication are part of the context or *res gestae* of the events at issue. *See, e.g., United States v. Fleck*, 413 F.3d 883, 890 (8th Cir. 2005) (evidence is *res gestae* evidence if it shows the "context" of alleged criminal or wrongful conduct). Moreover, the defendants are correct that such evidence is also relevant to Clay's behavior, her ability to perceive events at the time of the incidents in question, and her credibility, so that it satisfies Rules 401 and 402 regarding relevance and admissibility of relevant evidence. *See, e.g., Saladino v. Winkler*, 609 F.2d 1211, 1214 (7th Cir. 1979) (holding, in an excessive force case against a sheriff's deputy, that evidence of the plaintiff's intoxication was properly introduced to show that his judgment was impaired when the incident occurred, the reasonableness of the plaintiff's conduct at the time, and the appropriateness of the use of force in response); *Jarrell v. Ford Motor Co.*, 327 F.2d 233, 235 (4th Cir. 1965) ("Evidence as to the intoxicated condition of a plaintiff at the time of the happening of an accident in a negligence action is relevant, material and admissible on the question of plaintiff's contributory negligence." (citing 20 Am. Jur., Evidence, § 262, p. 252)). Again, Clay cannot "edit out" evidence of her intoxication, and her resulting behavior, while claiming that the defendants used excessive force against her and otherwise acted unreasonably in response to her behavior, simply because that evidence is detrimental to her claims. *Myers*, 503 F.3d at 681. Nor is such evidence necessarily unfairly prejudicial, even though it is possible that

intoxication evidence could invite a decision on an improper, emotional basis, *see Muhlenbruch*, 634 F.3d at 1001, where, as here, Clay put her behavior and credibility at issue by claiming that the defendants' responses to her conduct were excessive and unreasonable.

Again, this is not to say that the defendants have a license to "smear" Clay with disproportionate evidence of her intoxication. The balance of probative value against prejudice tips in favor of admissibility only as long as such evidence is used to focus on Clay's behavior, her ability to perceive events at the time of the incidents in question, and her credibility. Clay may object at trial to what she believes is excessive or cumulative evidence of her intoxication and may request an appropriate limiting instruction. *See, e.g, Cowling*, 648 F.3d at 699; *Young*, 644 F.3d at 761; *Walker*, 470 F.3d at 1275; *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose). I will consider the appropriateness of such objections or any proposed limiting instruction in the context of the evidence presented at trial.

The sixth part of Clay's Motion In Limine is denied.

### 3. *Summary*

Clay's December 26, 2013, Motion In Limine (docket no. 69) is granted as to exclusion of categories of evidence (1) through (4), to which the defendants offered no objection. On the other hand, Clay's Motion In Limine is denied as to the disputed parts, concerning exclusion of categories of evidence (5) and (6).

## B.    The County Defendants' Motion In Limine

### 1.    Challenged categories of evidence

Like Clay, the County Defendants filed their Omnibus Motions In Limine (docket no. 70) on December 26, 2013.  They seek exclusion of the following seven categories of evidence:  (1) use of the terms "search" or "strip search"; (2) evidence that the defendants could not require Clay to remove her top and bra and to change into a jail jumpsuit; (3) evidence from other cases; (4) evidence of other physical injuries alleged by Clay beyond the alleged head injury from her head being "banged" against hard surfaces; (5) evidence of Officer Jorma Schwedler's deposition testimony regarding whether a detainee has to follow an officer's order, regardless of whether it is lawful, including having the detainee "get down and lick" the officer's shoes; (6) evidence of jail officer performance evaluations and disciplinary incident reports; and (7) evidence of recent arrests of Woodbury County Corrections Officer David Tripp.

In her Resistance (docket no. 75), filed January 13, 2014, Clay resists exclusion of the evidence in categories (1) through (5), but does not resist exclusion of the evidence in categories (6) and (7).  In light of Clay's Resistance, I grant the County Defendants' Motion In Limine as to exclusion of categories (6) and (7).  I will consider in more detail here the disputed evidence in categories (1) through (5).

### 2.    Disputed categories of evidence

#### a.    Use of the terms "search" or "strip search"

Here, as in *Peters v. Woodbury County*, another case involving similar claims and the same counsel for the plaintiff and the county defendants, the County Defendants argue that I have already determined, in my summary judgment ruling, that whether or not there was a "strip search," there was no violation of Clay's privacy rights as a matter of law.  *Clay*, 982 F. Supp. 2d at 923-25, 927-28; *see also Peters v. Woodbury Cnty., Iowa*,

979 F. Supp. 2d 901, 938-40, 945 (N.D. Iowa 2013). Also as in *Peters*, Clay states that, in light of my prior ruling that there was no "strip search," she is "comfortable" with my preference for describing the right at issue as an "intrusion" and/or a "violation" of "privacy rights." Brief In Support Of Plaintiff's Resistance To Defendants Strim's And Delaney's Motion In Limine (docket no. 75), 1; *see also Clay v. Risdal*, C 12-4070-MWB (N.D. Iowa), Memorandum Opinion And Order Regarding The Parties' Motions In Limine (docket no. 84), 23. Nevertheless, as in *Peters*, Clay argues that she was certainly "stripped" and that use of the terms "stripped" or "strip search" does not rise to the level of prejudice required for exclusion under Rule 403, because those terms are not so inflammatory as to divert the jury's attention from the material issues in the trial. *Id*. at 1-2.

The first problem with Clay's argument is the same as the plaintiff's first problem in *Peters*: No "intrusion on and/or violation of privacy rights" claim is at issue any longer in this action, because I granted summary judgment to all defendants on Clay's "violation of privacy rights/strip search" claim." *See Clay*, 982 F. Supp. 2d at 928; *see generally Niver v. Travelers Indem. Co. of Ill.*, 433 F. Supp. 2d 968, 997 (N.D. Iowa 2006) (teaching that it is proper to exclude, pursuant to Rule 403, evidence at trial that is offered to dispute a claim or defense or a legal issue that has already been determined as a matter of law at summary judgment); *Blair v. Wills*, 420 F.3d 823, 830 (8th Cir. 2005) (suggesting that a trial court must be vigilant to exclude evidence that relates to dismissed claims or misconduct of a party that is irrelevant or only marginally relevant to remaining claims, because of the prejudicial effect of such evidence). The second problem is that Clay, like the plaintiff in *Peters*, is flat wrong that evidence is only "unfairly prejudicial" if it is "so inflammatory on its face as to divert the jury's attention from the material issues in the trial." As explained above, in addition to being "inflammatory," evidence may be "unfairly prejudicial" if it invites a decision on an

"improper basis," *see Muhlenbruch*, 634 F.3d at 1001, identified in the Advisory Committee Notes to Rule 403 as "commonly, though not necessarily, an emotional one," FED. R. EVID. 403, Advisory Committee Notes, and evidence may also be excluded if it is misleading or confuses the issues, FED. R. EVID. 403. Indeed, in my summary judgment ruling, I made clear that the objectionable nature of calling the incident in question a "strip search" or even a "search" was that it was, "at best, misleading, and at worst, invites jurors to decide the case on an improper, emotional basis." *Clay*, 982 F. Supp. 2d at 924; *accord Peters*, 979 F. Supp. 2d at 939.

Although I did not insist upon the use of the labels "violation of privacy rights" or "intrusion on privacy" for this part of Clay's claim in Count IV by all parties at all times from the point of the summary judgment ruling forward, *id*. at 925, the "intrusion on privacy" part of Count IV simply is no longer at issue. *Id*. at 928. In the context of the remaining claims, referring to the incident in which Clay's clothing was forcibly removed as a "strip search" or a "search" is even more misleading and even more likely to invite a decision on the remaining claims on an improper basis of an emotional response to a "strip search." Indeed, no "search," not even a "technical" one, is at issue any longer. *See id*. at 924 (acknowledging that describing the removal of clothing in the presence of others was "technically" a "search"). I have also determined that the forcible removal of Clay's clothes was constitutionally permissible, so that the only questions on her remaining claims of "excessive force" and "free speech retaliation" are whether the force used during the removal of her clothes—specifically, head "bashing"—was "excessive" and also "retaliatory." Thus, I believe that the legally correct terms for the removal of Clay's clothing, for which the probative value is not outweighed by any potential prejudice, include "forcible clothing exchange," "forced clothing exchange," "forcible removal of Clay's clothing," and even "forcibly stripping Clay's clothing," or slight variants, but do not include "strip search" or "search."

The County Defendants' Omnibus Motion In Limine is granted as to exclusion of evidence in category (1).

### b. Evidence that ordering Clay to remove her clothing or observing her doing so was prohibited

Next, the County Defendants seek exclusion of evidence that the defendants could not require Clay to remove her top and bra and to change into a jail jumpsuit or observe her doing so. The County Defendants argue that I have already determined that they did not violate Clay's privacy rights when they ordered her to remove her top and bra and change into a jail jumpsuit in the presence of Strim and Delaney. Clay responds that my ruling granting summary judgment on her "privacy rights" claim does not mean that evidence of the defendants' own policies and procedures regarding when and how a correctional officer should observe a detainee take off her clothes is inadmissible. She argues that the County Defendants are confusing a ruling on what claims can be submitted to the jury with a ruling on admissibility of evidence. She argues that evidence of policies and procedures is relevant to put in context her "excessive force" and "retaliation" claims. In reply, the County Defendants argue that the witnesses that Clay has identified to testify on this issue were not involved in Clay's arrest or the "booking incident" at issue here. They also argue that this evidence is more prejudicial than probative, as it confuses the issues now before the jury with issues related to a dismissed "privacy" claim.

Again, I encountered this issue and these arguments in *Peters*. As in *Peters*, I conclude that Clay is correct to the extent that she argues that what occurred is part of the context of her claims; indeed, it is the *res gestae*. *Cf. Fleck*, 413 F.3d at 890. What the County Defendants seek to exclude, however, is not evidence of what happened, but Clay's arguments that anything that happened—other than the alleged head "bashing"— was unlawful, specifically, because it purportedly violated Jail policies and procedures.

The County Defendants are correct that I have limited Clay's claims against them to "excessive force" and "free speech retaliation," and that I have further limited the question of what conduct constituted "excessive force" and what conduct constituted "retaliation" to the County Defendants' alleged "bashing" of Clay's head against hard surfaces. *Clay*, 982 F. Supp. 2d at 930, 932.

Clay asserts that she should, nevertheless, be able to present evidence that the County Defendants purportedly violated Jail policies or procedures, specifically, policies or procedures about requiring pretrial detainees to change into jail clothing and observing them doing so, as evidence of retaliation. One difficulty with Clay's argument is that, in my summary judgment ruling, I specifically concluded that the County Defendants knew that Clay was wearing an underwire bra; that Clay's underwire bra was defined as contraband for the reason that it posed a risk to Jail safety and security; that the County Defendants told Clay she would have to remove her bra and change into jail clothing; and that Clay refused to do so. *See id.* at 927. Thus, I concluded that requiring Clay to remove her underwire bra and observing her doing so did not violate Jail policies, procedures, or regulations about removal of detainees' clothing or observing them doing so, nor did it violate Clay's rights. *See id.* Thus, evidence that the County Defendants purportedly violated Jail policies or procedures about requiring pretrial detainees to change into jail clothing and observing them doing so, is not probative and not admissible. *See Niver II*, 433 F. Supp. 2d at 997 (teaching that it is proper to exclude, pursuant to Rule 403, evidence at trial that is offered to dispute a legal issue that has already been determined as a matter of law at summary judgment,)

Nevertheless, if Clay can show that the County Defendants somehow violated other Jail policies, procedures, or regulations during the forcible clothing exchange, that is evidence from which a reasonable juror could infer that the amount of force used in the clothing exchange was excessive and retaliatory. *Cf. Peters v. Risdal*, C 12-4070-

MWB (N.D. Iowa), Memorandum Opinion And Order Regarding The Parties' Motions In Limine (docket no. 84) at 33-34 (recognizing that there may be inferences of retaliatory intent from post-incident violations of policies or regulations).[2] Where the theories behind Clay's claims—that the County Defendants used excessive force and did so in retaliation for her complaints—remain the same, additional evidence of excessive force or retaliatory intent is probative and not unfairly prejudicial or confusing. *Cf. Niver II*, 433 F. Supp. 2d at 997; *Blair*, 420 F.3d at 830.

The County Defendants' Omnibus Motion In Limine for exclusion of evidence of violation of Jail policies, procedures, or regulations in category (2) is granted as to evidence that the County Defendants violated Jail policies, procedures, or regulations about requiring pretrial detainees to change into jail clothing and observing them doing so, but denied as to exclusion of evidence, if any, that the County Defendants violated other Jail policies, procedures, or regulations during and after the incident giving rise to Clay's claims.

### c.     *Evidence from other cases*

The third category of evidence that the County Defendants seek to exclude is evidence from other cases. More specifically, the County Defendants point out that Clay's counsel held a press conference in which he informed the public and media that Woodbury County Jail is continuing to violate the rights of female inmates and distributed a press packet containing misleading information. They argue that evidence, testimony, or settlements/verdicts from other cases could serve to confuse the public and to conflate the facts and evidence of other cases, particularly *Peters*, with the facts and evidence in this case, so that such evidence should be excluded pursuant to Rules 402, 402, and 403.

---

[2] Thus far, Clay has not asserted any *post-incident* violations of Jail policies, procedures, or regulations as demonstrating retaliatory intent.

Clay points to testimony from *Peters* that the only valid reasons for a detainee to be forced to remove her clothing in front of Jail officers are (1) if the detainee is suspected of concealing contraband or a weapon or (2) if the detainee is determined to be a suicide risk. She contends that the County Defendants should not be allowed to offer contrary evidence about the permissible reasons for forcibly removing a detainee's clothing and observing the detainee while doing so, without her opportunity to impeach them with prior testimony. She contends that a central issue in this case is whether a "strip search" was conducted in retaliation for her exercise of her right to free speech, so that disclosure of appropriate reasons for "stripping" her is highly relevant. She also contends, as the plaintiff in *Peters* did, that the news conference that the County Defendants complain about was called to let the public know that, despite a large jury verdict in a related case and settlement of other cases, detainees, particularly young female detainees, continue to be mistreated at the Jail. She contends that the news conference was to make clear to the public that resources are needed to clean up the culture of abuse at the Jail. She also contends that, to put the Woodbury County Jail's actions into context, the court should know that her counsel procured a large jury verdict against Linn County for a wrongful strip search in 2008 (in a case that admittedly involved no element of excessive force), and that, to date, counsel has not received a single call from any other detainee claiming to have been similarly mistreated at the Linn County Jail. She contends that, as a result of the cases against the Woodbury County Jail, her counsel has been contacted by dozens of people, almost all young women, who have similar complaints about being mistreated at the Woodbury County Jail, and that the complaints continue with at least one remaining under active consideration for the filing of a lawsuit.

In reply, the County Defendants reiterate that none of the witnesses from other cases that Clay has identified was involved in Clay's arrest or incarceration. They also

reiterate that evidence from other case has no relevance to Clay's remaining claims, or if it is somehow relevant, that it is more prejudicial than probative.

First, evidence of or from Clay's counsel's "press packet" is inadmissible hearsay for which no exception has been offered. *See* FED. R. EVID. 801. Second, for the reasons explained above, in Section II.b.2.a., beginning on page 12, there is no "strip search" at issue in this case, and I have excluded use of that term. Third, Clay's arguments about why her counsel held the news conference do nothing to demonstrate the admissibility of evidence of the news conference or any specific evidence about or from other cases.

The closer question is whether evidence, testimony, or settlements/verdicts from other cases is admissible in this trial. As I explained in the previous subsection, evidence of purported violations of Jail policies and procedures about when a detainee can be compelled to remove clothing and change into jail clothing and when corrections officers can observe the detainee doing so is inadmissible in this case, because there was no such violation in Clay's case. On the other hand, if Clay can marshal evidence from other trials or other detainees demonstrating that a detainee was subjected to substantially similar "excessive force" by Jail staff to remove the detainee's clothing or in retaliation for the detainee's complaints to Jail staff, that evidence may be admissible, for example, as demonstrating a pattern or practice of conduct at the Jail. Because the probative value of such evidence and its potential for prejudice or confusion depends, in part, on the degree of similarity between incidents, and I cannot determine that issue pretrial, I cannot now conclude that such evidence is inadmissible under Rules 401, 402, or 403. Furthermore, such evidence would be subject to objections or impeachment at trial concerning the sufficiency of the similarities, and testimony of any prior litigant about a similar claim would also be subject to evidence from or impeachment by the defendants as to any jury determination against that litigant on a similar claim.

The County Defendants' Omnibus Motion In Limine is denied as to exclusion of evidence in category (3), with the provisos stated above.

### d.    Evidence of physical injuries other than from head "banging"

The fourth category of evidence that the County Defendants seek to exclude is evidence of other physical injuries alleged by Clay beyond the alleged head injury from her head being "banged" against hard surfaces. They explain that Clay stated, in her deposition, that she suffered bruising on her legs and knees, an abrasion on the mid-back, and bruising on her inner arm, which she contends occurred at the Woodbury County Jail from the actions of the Jail officers. They point out that Clay also testified that she has no memory of any specific event or incident at the Jail that caused those injuries. They argue, again, that Clay's claims are limited to the questions of whether any alleged "head banging" was "excessive force" or "retaliation." Thus, they argue, any evidence suggestive of or speculating that other injuries occurred at the Woodbury County Jail due to the actions of Officers Strim and Delaney are inadmissible under Rules 403 and 602. They also contend that there is simply no evidence that would permit the jurors to determine whether any conduct that caused these other injuries constituted "excessive force."

Clay argues that nothing about the ruling limiting her claims to certain actions of the County Defendants precludes her from asserting injuries other than those to her head that resulted from the County Defendants' actions. She asserts that a reasonable juror could find that the injuries to her legs, knees, arm, and back could have occurred as a result of being lifted and thrown on the bunk. She argues that these other injuries are relevant to the amount of force used by the County Defendants at the time of the "exccessive force/retaliation" incident.

What injuries Clay purportedly sustained while being subjected to allegedly excessive force and use of such force in retaliation for complaints to Jail staff would ordinarily be a jury question. Here, one problem is that Clay purportedly cannot testify from personal knowledge that any of the injuries other than the injuries to her head occurred during that incident. *See* FED. R. EVID. 602. The second problem is that, in this case, there was a prior incident, involving defendant Echter's arrest of Clay, in which there appears to be evidence of some physical injuries to Clay, perhaps sustained because of her intoxication or because of defendant Echter's handling of her. Nevertheless, if Clay is able to generate a jury question as to the absence of the physical injuries in question, including the injuries to her legs, knees, arm, and back, prior to the incident at the Jail, but presence of such injuries immediately afterwards, then a reasonable juror could conclude that those injuries were caused by the incident in the Jail, as a matter of *res ipsa loquitur*. Clay may also be able to satisfy the "causation" problem with testimony of a treating physician.

If reliable evidence about the cause of other injuries can be adduced, questions remain whether such evidence is relevant and, if so, whether it is more prejudicial than probative or otherwise excludable under Rule 403. Evidence of injuries other than head injuries from "head banging" is reasonably probative of the amount of force used during the "head banging" incident and, consequently, whether the force used was disproportionate. *See* FED. R. EVID. 401. Moreover, the potential for prejudice from such evidence, *see* FED. R. EVID. 403, can be eliminated by a limiting instruction—if requested by the defendants—that explains the proper uses of such evidence. *See, e.g, Cowling*, 648 F.3d at 699; *Young*, 644 F.3d at 761; *Walker*, 470 F.3d at 1275; *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

Therefore, the County Defendants' Omnibus Motion In Limine is denied as to the evidence in category (4).

### e.    The "follow officers' orders" evidence

The last category of disputed evidence identified in the County Defendants' Omnibus Motion In Limine is evidence of Officer Jorma Schwedler's deposition testimony regarding whether a detainee has to follow an officer's order, regardless of whether it is lawful, including having the detainee "get down and lick" the officer's shoes.  The County Defendants contend that this testimony has no relevance to any of the issues remaining in this case and would only serve to cause unfair prejudice, waste time, confuse the issues, and mislead the jury.  More specifically, the County Defendants argue that this evidence is irrelevant, not least because (1) Officer Schwedler is no longer a defendant in these proceedings and his conduct that evening is not at issue, and (2) my summary judgment ruling has limited the issues in this case to whether Deputies Strim and Delaney used excessive force when requiring Clay to remove her top and bra and whether in doing so, they were retaliating against Clay for protesting her detainment at the Jail and the search of her personal property.  In short, they contend that my summary judgment ruling eliminated any claims by Clay that any of the County Defendants' orders to Clay during the incident in which Clay's clothing was forcibly removed were "unlawful."  They also argue that this evidence is unduly prejudicial, because there is no evidence that any Jail officers ever demanded that Clay "get down and lick" their shoes.

In response, Clay argues that Officer Schwedler's testimony should be allowed, because it explains and places in context the actions of Deputies Strim and Delaney, because Schwedler was a supervisor at the Jail at the time that Clay was detained and his testimony establishes the mindset of the officers employed by the Jail that night.  Clay argues that a jury could reasonably conclude that Strim and Delaney "bought into"

Schwedler's position and acted in accordance with it when Clay was noncompliant about removing her top and bra.

In reply, the County Defendants argue that there is no evidence that Schwedler's position or attitude about compliance with staff orders was the prevailing attitude at the Jail. Thus, they argue that Clay relies on nothing but speculation to try to attach Schwedler's position or attitude to them, when their own deposition testimony is to the contrary. They contend that Schwedler's testimony will mislead and distract the jury from the issues properly in the case, concerning their conduct during the incident.

Clay's argument for admissibility of Schwedler's testimony is a "Hail Mary" one. The County Defendants are correct that I have already concluded, at summary judgment, that the defendants were justified in using force to remove Clay's clothing. Thus, the remaining question for the "excessive force" claim is not the reason for the defendants' conduct, but whether the amount of force used was "excessive." *See Clay*, 982 F. Supp. 2d at 929. Although Clay is correct that that County Defendants' motivation for using any "excessive" force is still at issue on her "retaliation" claim, Schwedler's testimony does little to illuminate that motivation. The probative value of such testimony is slight, at least where Clay has not identified any basis other than speculation to attribute similar attitudes or positions to Strim and Delaney and further speculation to suggest that Strim and Delaney acted in accordance with such attitudes and positions in compelling Clay to remove her top and bra on the night in question. Clay's argument that Schwedler's testimony about his attitude toward compliance with officers' orders is probative of the attitudes of Strim and Delaney amounts to little more than "guilt by association."

There is considerably more weight on the "unfair prejudice" and "confusion of the issues" side of the Rule 403 balance. *See* FED. R. EVID. 403; *Muhlenbruch*, 634 F.3d at 1001. "Guilt by association" is unfairly prejudicial, and a "mini-trial" concerning whether Schwedler's attitudes can be attributed to Strim and Delaney would be confusing

and a waste of time. Moreover, the only evidence of retaliatory intent that Clay adduced at summary judgment was the use of purportedly "excessive force," that is, the "head banging." *Clay*, F. Supp. 2d at 932. Clay cannot now try to reformulate her "retaliation" claim to be based on alleged prevailing attitudes about compliance with officers' orders when she did not marshal that evidence at summary judgment. Doing so would be unfairly prejudicial to an extent that outweighs any marginal relevance that evidence might have to the questions actually at issue at trial. *Niver II*, 433 F. Supp. 2d at 997 (citing Rule 403).

The County Defendants' Omnibus Motion In Limine is granted as to the evidence in category (5).

### 3. Summary

The County Defendants' December 26, 2013, Omnibus Motion In Limine (docket no. 70) is granted as to evidence in categories (1), (5), (6), and (7). It is granted in part and denied in part as to exclusion of evidence in category (2), as explained, above. It is denied as to evidence in categories (3) and (4).

## C. Defendant Echter's Motion In Limine

### 1. Challenged categories of evidence

The last evidentiary motion now before me is defendant Echter's December 26, 2013, Motion In Limine (docket no. 71). In his Motion, Echter seeks exclusion of the following six categories of evidence: (1) any evidence or claim for any physical injury at any time, emotional injury, or trauma resulting from his interaction with Clay and his inspection of her purse at the Jail; (2) any reference by Clay or her attorney relating to a "search" of Clay's cell phone; (3) any reference or questions relating to Sioux City Police Department Policies and Procedures or training criteria; (4) any statement or reference to the failure to preserve the in-car audio and video from Clay's arrest; (5) any reference

to Echter being called a derogatory name by a correctional officer and any response by Echter; and (6) any attempt to offer "Golden Rule" arguments on the issue of liability or damages.

In her Resistance (docket no. 76), Clay resists exclusion only of the evidence in categories (1) and (2), but not the evidence in categories (3) through (6). In light of Clay's responses, I grant Echter's Motion In Limine as to exclusion of categories (3) through (6). I will consider in more detail here only the disputed evidence in categories (1) and (2).

### 2. Disputed categories of evidence

#### a. Claims of injury from the incidents involving defendant Echter

The first disputed category of evidence in Echter's Motion In Limine is any evidence or claim for any physical injury at any time, emotional injury, or trauma resulting from Echter's interaction with Clay and his inspection of her purse at the Jail. Echter argues that such evidence should be excluded at trial, because Clay has not so far identified any medical or mental health provider to whom Clay made any statements regarding his actions, and Clay has failed to produce any evidence of treatment incurred as a result of his alleged actions.

Clay responds that, while she is not alleging physical injury resulting from Echter's interaction with her and his inspection of her purse at the Jail, nor will she present any evidence relating to such an allegation, she is seeking damages for mental pain and suffering or emotional distress. She argues that emotional distress damages may be supported by utilizing medical reports or records, but her own testimony is sufficient. She asserts that she will provide at trial evidence that she suffered emotional damages as a central component of her claim against Echter and that such evidence should be allowed.

I read Clay's response as actually and expressly conceding that there is no evidence to support a claim for any physical injury at any time resulting from Echter's interaction with Clay and his inspection of her purse at the Jail. Thus, Echter's Motion In Limine is granted as to evidence of physical injury in category (1). On the other hand, Echter's attempt to exclude evidence of emotional injury or emotional trauma is still disputed. As the Eighth Circuit Court of Appeals has repeatedly explained

> A compensatory damage award for emotional distress may be based on a plaintiff's own testimony. *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 531 (8th Cir.1999). Such an award must be "supported by competent evidence of genuine injury," id. (internal quotation omitted), but medical or other expert evidence is not required. *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir.1997).

*Bennett v. Riceland Foods, Inc.*, 712 F.3d 546, 552 (8th Cir. 2013) (§ 1981 and Title VII case); *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 932 (8th Cir. 2010) (Title VII case); *Heaton v. The Weitz Co., Inc.*, 534 F.3d 882, 891 (8th Cir. 2008) (Title VII case); *Christensen v. Titan Distrib., Inc.*, 481 F.3d 1085, 1097 (8th Cir. 2007) (ADA case). Thus, this part of Echter's Motion In Limine seeking exclusion of evidence of emotional injury or emotional trauma is denied.

### b. Evidence of a "search" of Clay's cell phone

The only other category of evidence in Echter's Motion In Limine still in dispute is any reference by Clay or her attorney relating to a "search" of Clay's cell phone. Echter argues that Clay has withdrawn her claim based on an allegeldy unconstitutional search of her cell phone, so that any statements about that alleged search are irrelevant and, even if somehow relevant, unduly prejudicial and confusing to the jury. Clay counters that the alleged search of her cell phone is a factual matter that puts in context her claim that Echter's search of her purse violated her Fourth Amendment rights. She argues that not allowing evidence of Echter's manipulations of her cell phone would cause

significant juror confusion. She contends that this evidence is not so inflammatory that it should be excluded.

The fact of the cell phone search is *res gestae*. *Cf. Fleck*, 413 F.3d at 890. Nevertheless, it has limited relevance, even as demonstrating the "context" of Clay's remaining claims, where Clay does not now assert that the phone search was "wrongful." Indeed, referring to Echter "searching" the cell phone is potentially prejudicial and confusing where there is no claim involving any "search" or "intrusion on privacy" at issue any longer. Anything more than a passing reference to Echter "looking at" Clay's cell phone might also distract jurors from what is truly at issue, which is whether Echter violated Clay's rights by searching her purse. *See* FED. R. EVID. 403 (permitting the court to exclude relevant evidence if its probative value is outweighed by the danger of confusion of the issues). I conclude that the better way to address this evidentiary issue is to exclude at trial, for now, only references to a "search" of Clay's cell phone by Echter. *Cf., supra*, Section II.B.2.a, beginning at page 12. At trial, Echter may object to what he believes is excessive or cumulative evidence about him looking at Clay's phone and/or he may request a limiting instruction to the effect that Echter looking at Clay's phone is not a basis for any claim. *See, e.g, Cowling*, 648 F.3d at 699; *Young*, 644 F.3d at 761; *Walker*, 470 F.3d at 1275; *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

Echter's Motion In Limine is granted in part and denied in part as to exclusion of evidence in category (2), as explained above.

### 3.    *Summary*

Echter's December 26, 2013, Motion In Limine (docket no. 71) is granted as to exclusion of evidence of physical injury, but denied as to exclusion of evidence of emotional injury in category (1). It is also granted in part and denied in part as to

exclusion of evidence in category (2), as explained just above. His Motion In Limine is granted as to exclusion of evidence in categories (3) through (6).

## III.    CONCLUSION

Upon the foregoing,

1.    Plaintiff Clay's December 26, 2013, Motion In Limine (docket no. 69) is **granted in part and denied in part**, as follows:

    a.    The Motion is **granted** as to exclusion of categories of evidence (1) through (4); but

    b.    The Motion is **denied** as to exclusion of categories of evidence (5) and (6);

2.    Plaintiff Clay's September 5, 2014, Motion In Limine (docket no. 81) is **denied as duplicative** of her December 26, 2013, Motion In Limine (docket no. 69).

3.    The County Defendants' December 26, 2013, Omnibus Motion In Limine (docket no. 70) is **granted in part and denied in part**, as follows:

    a.    The Omnibus Motion is **granted** as to exclusion of categories of evidence (1), (5), (6), and (7);

    b.    The Ominibus Motion is **granted in part and denied in part** as to exclusion of evidence in category (2), as explained, above; and

    c.    The Omnibus Motion is **denied** as to exclusion of evidence in categories (3) and (4);

4.    Defendant Echter's December 26, 2013, Motion In Limine (docket no. 71) is **granted in part and denied in part**, as follows:

    a.    The Motion is **granted** as to exclusion of evidence of physical injury, but **denied** as to exclusion of evidence of emotional injury in category (1);

b.     The Motion is **granted in part and denied in part** as to exclusion of evidence in category (2), as explained above; and

c.     The Motion is **granted** as to exclusion of evidence in categories (3) through (6).

**IT IS FURTHER ORDERED** that, to avoid exposure of potential jurors to information about disputed evidence, this ruling shall be sealed until ten days after completion of trial or any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

**IT IS SO ORDERED**.

**DATED** this 12th day of September, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA